**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Hansen Colwell,<br><br>       Plaintiff,<br><br>v.<br><br>Costco Wholesale Corporation,<br><br>       Defendant. | No. CV-24-00310-PHX-ROS<br><br>**ORDER** |

Before the Court is Defendant Costco Wholesale Corporation's Motion for Summary Judgment (Doc. 29), to which Plaintiff responded (Doc. 34), and Defendant replied (Doc. 36). Defendant supports its Motion with a Statement of Facts (Doc. 30, SOF), and Plaintiff supports her Response with a Controverting Statement of Facts (Doc. 35, CSOF). Defendant's Motion will be decided without oral argument. *See* LRCiv 7.2(f).

For the reasons that follow, the Court will deny Defendant's Motion for Summary Judgment.

## I.  BACKGROUND

All facts set forth below are undisputed or not subject to reasonable dispute based on proffered admissible evidence unless otherwise noted.

Plaintiff Sarah Hansen Colwell is a Black woman of Middle Eastern national origin who has been employed by Defendant Costco Wholesale Corporation ("Costco") since 2016. On March 21, 2016, Plaintiff submitted an application for a pharmacist position with a Costco store in Mesa, Arizona ("Mesa Pharmacy"). (SOF ¶ 13.) Rick Kautz, the

pharmacy manager for the Mesa Pharmacy since 2012, informed Plaintiff he could not hire her at that time because she had not yet obtained her pharmacy license, inviting Plaintiff to apply again once she obtained her license. (*Id.* ¶ 14.)

In fall 2016, after Plaintiff obtained her pharmacy license, she contacted Kautz again about a position at the Mesa Pharmacy. (*Id.* ¶ 15.) At that time, there were no full-time or part-time pharmacist positions available, so on October 26, 2016, Kautz decided to hire Plaintiff as a Limited Part-Time Pharmacist ("LPT"). (*Id.* ¶¶ 16–17.) Costco's Employee Agreement classifies LPTs as "non-exempt Pharmacists who work infrequently or on call and are not guaranteed a minimum number of hours per pay period." (*Id.* ¶ 5.) In practice, this means Costco does not guarantee LPTs a minimum number of hours or shifts. (*Id.* ¶ 7.) But unlike full- or part-time pharmacists, LPTs are not limited to their specific Costco location and may pick up shifts at other Costco pharmacies in need of coverage.[1] (*Id.* ¶ 12.)

As the manager of the Mesa Pharmacy, Kautz is responsible for setting the schedule for pharmacists, and he regularly schedules LPTs on Saturdays because most LPTs have other work commitments on weekdays. (*Id.* ¶¶ 9–10.) Other than Saturday shifts, Kautz schedules LPTs on an "as needed" basis, such as when a full- or part-time pharmacist is out on leave or on days he expects will be particularly busy. (*Id.* ¶ 11.)

Throughout Plaintiff's employment at the Mesa Pharmacy, Kautz offered her every Saturday shift. (*Id.* ¶ 26.) Plaintiff would also pick up various weekday shifts at the Mesa Pharmacy; her availability was somewhat limited by work commitments at other pharmacies, but Plaintiff provided Kautz with her weekly schedule so he would know what days she was available. (*Id.* ¶¶ 29–31.)

In January 2017, Kautz began assigning Plaintiff the Monday shift after one of the part-time pharmacists took paternity leave, and Kautz continued regularly scheduling Plaintiff for Monday shifts even after the part-time pharmacist returned to work. (*Id.* ¶ 32.) Unlike with Saturday shifts, these Monday shifts would ordinarily require Plaintiff and

---

[1] Plaintiff objects to this statement, asserting Kautz once told Plaintiff she needed to be "committed to his store" after becoming frustrated that Plaintiff covered a shift at another store for a pharmacist on maternity leave. (CSOF ¶ 12.) However, the general statement regarding LPTs' ability to pick up shifts at other stores is not disputed.

Kautz to work together. (CSOF ¶ 94.)

In March 2017, Plaintiff was hired as a part-time pharmacist at Medmetrics Compounding Pharmacy. (SOF ¶ 36.) At Medmetrics, Plaintiff was scheduled to work two to three days a week, thus limiting her availability with the Mesa Pharmacy to around three days per week, excluding Tuesdays and Wednesdays. (*Id.* ¶¶ 37–38.) Kautz thereafter continued to offer Plaintiff shifts at the Mesa Pharmacy on Saturdays and Mondays, as well as occasional weekday shifts based on her availability and the Mesa Pharmacy's needs. (*Id.* ¶ 39.)

Sometime in September 2017, Plaintiff shared with Kautz and other coworkers at the Mesa Pharmacy that she did not get along with one of her brothers. (CSOF ¶ 51.) Defendant maintains, and Plaintiff disputes, that Plaintiff specifically joked that her brother "was probably a terrorist." (*Id.*)

On November 27, 2017, Plaintiff again mentioned her brother, and one of her coworkers, Josh Webber, made a comment along the lines of "is that the terrorist?" (SOF ¶ 52.) That afternoon, Plaintiff told Kautz and the coworker, Josh Webber, that she did not find the "terrorist" jokes funny and wanted them to stop. (*Id.* ¶ 53.) Plaintiff estimates that Kautz had regularly called her a "terrorist"—rather than just her brother—on at least ten occasions since she joined the Mesa Pharmacy a year prior, and Webber had done so roughly five times. (CSOF ¶ 51.) This incident on November 27, 2017, was the first time Plaintiff voiced any concern with these comments to Kautz and Webber or asked them to stop; after this conversation, there were no further "terrorist" comments. (SOF ¶¶ 54–55.)

On November 28, 2017, Plaintiff submitted a complaint to the General Manager of the Mesa Costco, Lori Smith, alleging Kautz harassed and discriminated against her by calling her a terrorist and telling Plaintiff she "possessed a terrorist tongue." (*Id.* ¶¶ 56–57.) Smith immediately opened an investigation per Costco policy and interviewed Plaintiff the same day, November 28. (*Id.* ¶ 61.) After interviewing Plaintiff, Smith also interviewed Kautz on November 28; Kautz admitted only that there had been some unprofessional conversations being held in the pharmacy but he denied making any "terrorist" comments.

(*Id.* ¶¶ 62–63.) Costco's investigation into Plaintiff's allegations found that there had been no comments directed at Plaintiff because of her race or national origin but that Kautz had failed to meet the expectations of his management position by participating in inappropriate conversations in the workplace and for his failure to address the inappropriate conduct of his subordinates.[2] (*Id.* ¶¶ 63–64.)

On December 1, 2017, Smith issued Kautz an Employee Counseling Notice for "failure to perform work as required." (*Id.* ¶ 65.) Smith met with Kautz on December 5, 2017, to review Costco's investigation findings and conduct expectations. (*Id.* ¶ 66.) On December 9, 2017, Smith met with Plaintiff to discuss Costco's investigation findings and told Plaintiff that Costco had taken corrective action to prevent any future problems with Kautz's conduct. (*Id.* ¶ 67.)

After Costco concluded its investigation, Plaintiff alleges Kautz "significantly reduced the amount of shifts he was offering for [her]." (*Id.* ¶ 72.) Specifically, Kautz reassigned a shift on Thursday, December 28, 2017, for which Kautz had already confirmed Plaintiff's availability and instead gave the shift to a "floating" LPT—an LPT who, unlike Plaintiff, was not assigned to the Mesa Costco location. (CSOF ¶ 92.) Furthermore, Kautz thereafter stopped scheduling Plaintiff for the Monday shifts that he had regularly scheduled her for since January 2017. (*Id.* ¶ 94.)

In February 2018, because she had lost shifts at Costco since December 2017, Plaintiff began working full-time with Medmetrics, the compounding pharmacy where she had previously worked part-time, after Medmetrics promoted her to Pharmacy Manager. (*Id.* ¶¶ 74, 78.) Plaintiff informed Kautz sometime in February 2018 that she would no longer be available for weekday shifts at the Mesa Pharmacy. (Doc. 30-1 at 10; SOF ¶ 75.) Occasionally, Plaintiff worked at Medmetrics on Saturdays from 9 a.m. to 1 p.m., but she continued to work at Costco on Saturday afternoons. (CSOF ¶ 74.)

On March 5, 2018, Plaintiff submitted a charge with the EEOC and the Arizona

---

[2] Plaintiff disputes whether the investigation's findings were made by Smith or Kyle Hoffman, the Personnel Manager at the Mesa Costco who was not part of the investigation. (CSOF ¶¶ 63–64.)

Civil Rights Division alleging discrimination and retaliation. (Doc. 30-2 at 61.)

On October 20, 2023, the EEOC issued a determination letter finding "reasonable cause to believe [Costco] violated Title VII when it subjected Charging Party to harassment because of her national origin and retaliated against her for complaining about national origin-based harassment by denying her the opportunity to work additional shifts." (Doc. 1-1 at 4.) The EEOC thereafter issued Plaintiff a notice of right to sue on November 27, 2023. (*Id.* at 7.)

## II.   LEGAL STANDARD

Summary judgment is granted if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The nonmoving party must then point to specific facts establishing there is a genuine issue of material fact for trial. *Id*.

At summary judgment, the Court considers only admissible evidence. *See* Fed. R. Civ. P. 56(c)(1)(B). When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists "if the [admissible] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In ruling on the motion for summary judgment, the Court will construe the evidence in the light most favorable to the nonmoving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

## III.   ANALYSIS

Defendant moves for summary judgment on both of Plaintiff's claims: Title VII race and national origin discrimination and Title VII retaliation. Should the Court not dismiss

all of Plaintiff's claims, Defendant alternatively moves for summary judgment on Plaintiff's claim for punitive damages.

### A. Title VII Discrimination

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" on account of the employee's race or national origin. 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment on a discrimination claim, a plaintiff must "create a triable issue of fact regarding discriminatory intent." *Alozie v. Ariz. Bd. of Regents*, 431 F. Supp. 3d 1100, 1111 (D. Ariz. 2020) (quoting *Habib v. Matson Navigation Co.*, 694 F. App'x 499, 500–01 (9th Cir. 2017)). To meet this burden, a plaintiff may produce "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the adverse employment action; or alternatively, a plaintiff may rely on the *McDonnell Douglas* burden-shifting framework to raise a rebuttable presumption of discrimination.[3] *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013).

It is undisputed Plaintiff belongs to a protected class. But Defendant argues Plaintiff's discrimination claim fails because she cannot show (1) an adverse employment action nor (2) similarly situated individuals outside her protected class who were treated more favorably.

### 1. Adverse Employment Action

First, Plaintiff's alleged "significant" reduction in shifts constitutes an adverse

---

[3] To establish a prima facie case under *McDonnell Douglas*, a plaintiff must show: (1) they belong to a protected class; (2) they were qualified for their position; (3) they were subject to an adverse employment action; and (4) similarly situated individuals outside their protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802)). "If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 1124 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

employment action.[4] Defendant concedes that Plaintiff's shifts were decreased after she complained to Kautz and Costco about Kautz's discriminatory comments. However, Defendant argues this decrease in shifts was "immaterial" because Plaintiff, as an LPT, "was not guaranteed any shifts at Costco, much less a full- or part-time position; that her shifts depended on her own availability; and that throughout her employment, her availability was limited by her full-time employment at other pharmacies." (Doc. 36 at 2.) Thus, Defendant argues, "even if an immaterial change in hours could be an adverse action, Plaintiff's shifts were a function of her unavailability, not discrimination." (*Id.*)

Defendant does not explain why the Court should accept as true the allegation that Plaintiff was "unavailable," even prior to February 2018 when she went full-time at Medmetrics. Moreover, Defendant mistakenly conflates Plaintiff's prima facie burden with the showing necessary to create a triable issue of pretext. Defendant's proffered nondiscriminatory reason to reduce Plaintiff's shifts—her alleged scheduling conflicts with other jobs—does not overcome Plaintiff's position that Defendant "significantly" reduced her shifts after she objected to the discriminatory "terrorist" comments. It is also not controlling that LPTs are generally not guaranteed any number of shifts. For nearly a year, Plaintiff had been regularly scheduled for the Monday shift. When Kautz abruptly stopped scheduling Plaintiff on Mondays, Plaintiff contends her shifts were reduced. This is

---

[4] In her Complaint, Plaintiff alleges two adverse actions under her discrimination claim: the reduction in shifts and a hostile work environment. (Doc. 1 ¶¶ 57–58.) In its Motion for Summary Judgment, Defendant argues Plaintiff's discrimination claim fails under both theories. (Doc. 29 at 9–14.) But in her Response, Plaintiff only addresses the hostile work environment theory. (Doc. 34 at 4–7.) Thus, in its Reply, Defendant argues Plaintiff waived the issue entirely and Defendant "is entitled to summary judgment on Plaintiff's disparate treatment claim." (Doc. 36 at 3–4.) Because Plaintiff's discrimination claim encompasses both adverse actions, dismissal is inappropriate as her reduction in shifts is sufficient for the discrimination claim to survive. *See Hodge v. McDonough*, No. 21-16392, 2023 WL 6532642, at *2 (9th Cir. Oct. 6, 2023) ("[A] Title VII plaintiff can allege multiple adverse employment actions and need only prove one to prevail." (citing *Ray v. Henderson*, 217 F.3d 1234, 1243–44 (9th Cir. 2000))); *see also Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 92 (N.D.N.Y. 2013) (noting "a hostile work environment constitutes an adverse employment action" for a discrimination claim (citing *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2022))); *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 312 (W.D.N.Y. 2003) ("Hostile work environment claims are merely a subset of disparate treatment claims." (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 356 (2d Cir.2001)));; *Doe By and Through Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1423–25 (N.D. Cal. 1996) (discussing hostile work environment as a "species of 'disparate treatment' or 'intentional discrimination'").

sufficient to establish Plaintiff suffered an adverse employment action.

## 2. Similarly Situated Comparators

Second, Plaintiff need not show evidence of similarly situated comparators to survive summary judgment. This requirement is only for claims that rely on the *McDonnell Douglas* burden-shifting framework to raise a rebuttable inference of discriminatory motive. As the Ninth Circuit has explained:

> Our cases clearly establish that plaintiffs who allege disparate treatment under statutory anti-discrimination laws need not demonstrate the existence of a similarly situated entity who or which was treated better than the plaintiffs in order to prevail. Proving the existence of a similarly situated entity is only *one* way to survive summary judgment on a disparate treatment claim. A plaintiff does not, however, have to rely on the *McDonnell Douglas* approach to create a triable issue of fact regarding discriminatory intent in a disparate treatment case. Instead, he may "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the defendant and that the defendant's actions adversely affected the plaintiff in some way.

*Pac. Shores Props.*, 730 F.3d at 1158 (citation modified).

Here, Plaintiff does not need to rely on the *McDonnell Douglas* framework, as she offers direct or circumstantial evidence—including Kautz repeatedly calling her a "terrorist," with the final comment shortly before her shift reduction, as well as her EEOC determination letter—that a discriminatory reason more likely than not motivated the adverse employment action. Thus, Plaintiff's failure to show similarly situated comparators is irrelevant.

## B. Title VII Retaliation

The *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation claims. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). "To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Id.* at 1034–35 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir.1994)). If the employer proffers a legitimate, nonretaliatory reason for its action, the plaintiff must then show the articulated reason is pretextual because it is

unworthy of credence or because a retaliatory reason more likely than not motivated the action. *Yartzoff*, 809 F.2d at 1377.

It is undisputed Plaintiff engaged in protected activity when she filed her November 2017 HR complaint. Defendant argues Plaintiff's retaliation claim fails because she did not suffer an adverse employment action and, even if she had suffered an adverse action, cannot show causation.

### 1. Adverse Employment Action

First, Plaintiff has demonstrated she suffered an adverse employment action when her shifts were cut. Defendant argues this was not "a materially adverse change to the terms and conditions of her employment," (Doc. 29 at 13), but Defendant errs by using the narrower definition for adverse actions used in the discrimination context. The definition of an adverse action in retaliation claims is broader than for discrimination claims, encompassing any action that is "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000); *see Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 60–63 (2006); *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018) ("Title VII retaliation claims may be brought against a much broader range of employer conduct than substantive claims of discrimination.").

Defendant does not dispute Plaintiff suffered a decrease of two to four shifts per month, instead arguing this was not adverse because Plaintiff's position was not guaranteed a minimum number of hours or shifts per week and Plaintiff worked even fewer hours after transferring to the Tucson Costco pharmacy in 2019 without seeking more shifts. Neither contention is controlling, as the inquiry does not concern the deterrent effect on this particular Plaintiff who already engaged in protected activity. *See, e.g.*, *Manning v. Bolden*, 102 F. App'x 904, 905 (6th Cir. 2004) ("The standard for 'adverse action' is an objective one and it is irrelevant whether a particular plaintiff was deterred from engaging in protected conduct because he suffered an adverse action."); *Kardasz v. Spranger*, No. 17-CV-10937, 2019 WL 1989021, at *8 (E.D. Mich. May 6, 2019) ("The question is not

whether Plaintiff was deterred from engaging in the protected activity as a result of the adverse action. Rather, the question is whether a future person would be deterred from engaging in the same protected activity as a result of the adverse action.") Instead, the Court must consider whether Plaintiff's shift reduction after her complaint is the sort of action that might reasonably deter any employee from filing complaints, lest they suffer a similar shift reduction. Here, the Court finds it is reasonably likely a loss of two to four shifts per month would deter employees from engaging in protected activity.

### 2. Causation

Second, Plaintiff has met her burden to show causation.[5] Without direct evidence, a plaintiff may still prove causation with "circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). Here, Plaintiff has proffered evidence of causation based on Kautz's knowledge of her protected activity and the proximity in time: Kautz received a counseling notice informing him of Plaintiff's complaint on December 11, 2017, and Kautz thereafter reassigned Plaintiff's shift for December 28, 2017, for which she had already confirmed her availability.

Furthermore, as with her discrimination claim, Plaintiff's EEOC determination letter found reasonable cause to believe Defendant "retaliated against her for complaining about national origin-based harassment by denying her the opportunity to work additional shifts." (Doc. 1-1 at 4.) The EEOC's finding, while not a "free pass through summary judgment," is "highly probative" evidence supporting Plaintiff's retaliation claim. *Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005). Taken together, Plaintiff has sufficiently established a triable issue of fact regarding a causal link between her protected activity and her reduction in shifts.

---

[5] Again, Defendant argues Plaintiff fails to show causation because "the evidence clearly shows that the 'but-for' cause for the decrease in Plaintiff's shifts was her own availability based on her other work commitments." (Doc. 36 at 9.) However, given Plaintiff's evidence of retaliatory motive, Defendant's argument is more conceivably relevant to whether Plaintiff can show this legitimate reason is pretextual.

## C. Pretext

Because Plaintiff's discrimination and retaliation claims are interrelated, the Court will consider whether Plaintiff has established a triable issue of pretext as to both claims simultaneously.[6]

Defendant asserts "Plaintiff has no evidence, much less specific and substantial evidence, that Kautz did not offer her more shifts" for discriminatory or retaliatory reasons "because the sole reason, as Kautz consistently explained, was her own scheduling conflicts." (Doc. 29 at 10.) Specifically, Defendant contends "the only reason Costco did not offer Plaintiff additional work hours was because starting in February 2018, Plaintiff could not work more than one or two days per week due to her full-time employment at other pharmacies." (*Id.*)

Because Defendant has articulated a legitimate, nondiscriminatory reason for the adverse action, Plaintiff "must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

Under Title VII, "a plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action" or by "relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted." *Cornwell*, 439 F.3d at 1028 n.6. "A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d at 1090, 1094–95 (9th Cir. 2005).

---

[6] Plaintiff's discrimination claim does not rely on the *McDonnell Douglas* burden-shifting framework, so in making her prima facie case, Plaintiff has already satisfied her burden to refute Defendant's proffered legitimate motive. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004) (noting that a plaintiff not relying on *McDonnell Douglas* nevertheless must produce some evidence of discriminatory or retaliatory intent that counters a defendant's proffered explanation).

"Direct evidence is evidence 'which, if believed, proves the fact [of discriminatory or retaliatory purpose] without inference or presumption.'" *Id.* at 1095 (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998)). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.*; *see, e.g.*, *Godwin*, 150 F.3d at 1221 (supervisor stated he "did not want to deal with [a] female"); *Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir.1997) (deeming "direct" evidence that the employer had referred to an employee other than the plaintiff as a "dumb Mexican"). "Because direct evidence is so probative, the plaintiff need offer 'very little' direct evidence to raise a genuine issue of material fact." *Coghlan*, 413 F.3d at 1095 (quoting *Godwin*, 150 F.3d at 1221). When relying on indirect, circumstantial evidence to show pretext, "that evidence must be specific and substantial to defeat the employer's motion for summary judgment." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting *Coghlan*, 413 F.3d at 1095). This "specific and substantial" standard, however, "is tempered by [the Ninth Circuit's] observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one." *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015).

Here, Plaintiff has met her burden to show pretext by offering sufficient direct evidence and specific and substantial circumstantial evidence by which a reasonable jury could find Defendant was motivated by discriminatory or retaliatory reasons. Plaintiff's EEOC determination letter is itself "highly probative" evidence that Defendant discriminated and retaliated against Plaintiff. *See Mondero*, 400 F.3d at 1215. Kautz's alleged "terrorist" comments toward Plaintiff serve as direct evidence of discriminatory animus. *See Coghlan*, 413 F.3d at 1095. Additionally, Plaintiff has specific and substantial circumstantial evidence that Kautz acted with retaliatory motive given the short proximity in time between when Kautz received notice of Plaintiff's complaint and when he began reducing her shifts. *See Dawson*, 630 F.3d at 936.

Moreover, Plaintiff's evidence also indirectly shows pretext by casting doubt on Defendant's proffered explanation as unworthy of credence. Defendant argues Kautz

stopped assigning Plaintiff the Monday shifts because of her own limited availability. But Kautz allegedly reassigned Plaintiff's shift for December 28, 2017, after Plaintiff had already confirmed her availability and at least one month before Plaintiff informed Kautz of her new full-time position with Medmetrics. What is more, this shift was reassigned to a "floating" LPT, despite Defendant's practice to give priority to a non-floating LPT like Plaintiff who was assigned to that particular store. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011) ("A plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage.").

Defendant argues Plaintiff cannot overcome the same-actor inference to establish pretext. The Court disagrees. "[W]here the same actor is responsible for both the hiring and the [adverse employment action], and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Coghlan*, 413 F.3d at 1096 (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996)). Defendant argues this inference applies because Kautz was the individual who decided to hire Plaintiff roughly a year before he allegedly engaged in an adverse employment action. (Doc. 29 at 11.) Assuming the same-actor inference applies, here a jury could find this inference is overcome because Plaintiff has presented both direct and circumstantial evidence of the same actor's discriminatory or retaliatory motives nearly a year after Plaintiff's hiring, which is sufficient to raise a triable issue of pretext on her discrimination and retaliation claims. *See, e.g.*, *Villareal v. Chubb & Son, Inc.*, No. SACV 11-0674 DOC, 2012 WL 3151254, at *8 (C.D. Cal. July 31, 2012) ("In *Coghlan*, the plaintiff presented a case of discrimination that was entirely circumstantial and did not at all serve to refute the legitimate nondiscriminatory reason proffered by defendants. Here, . . . Plaintiff provides both direct and circumstantial evidence of discrimination such that a rational factfinder could determine that the same-actor inference was overcome." (citation omitted)).

### D. Punitive Damages

Defendant alternatively moves for summary judgment on Plaintiff's claim for

punitive damages. Under Title VII, punitive damages may be awarded "if the complaining party demonstrates the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) ("[I]n the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."); *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998) ("Punitive damages may not be awarded, however, where a defendant's discriminatory conduct is merely 'negligent in respect to the existence of a federally protected right.'" (quoting *Hernandez-Tirado v. Artau*, 874 F.2d 866, 870 (1st Cir. 1989))). However, "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Kolstad*, 527 U.S. at 545 (quoting *Kolstad v. Am. Dental Ass'n*, 139 F.3d 958, 974 (D.C. Cir. 1998) (Tatel, J., dissenting)). To prevail on a good faith affirmative defense, "an employer must show not only that it has adopted an anti-discrimination policy, but that it has implemented that policy in good faith." *Passantino v. Johnson Consumer Prods., Inc.*, 212 F.3d 493, 517 (9th Cir. 2000).

Defendant argues the evidence shows "any alleged harassment or discrimination by Kautz was contrary to Costco's good faith efforts to comply with Title VII." (Doc. 29 at 16.) Specifically, Defendant asserts "Costco promptly and thoroughly investigated the allegations in Plaintiff's November 2017 complaint, issued Kautz a Counseling Notice, and ordered Kautz to repeat the Standard of Conduct for Managers training." (*Id.*)

In response, Plaintiff disputes whether Costco in fact implemented its anti-harassment policy in good faith. In particular, Plaintiff notes the clear language of Costco's anti-harassment policy forbids the use of "epithets, slurs, [and] negative stereotyping," (Doc. 30-1 at 17), conflicts with Costco's "astounding conclusion" that "the allegations against Mr. Kautz did not rise to the level of a policy violation." (Doc. 34 at 7.) Thus, Costco's response to Plaintiff's internal complaint was simply to "counsel" Kautz for being

"unprofessional," which involved Kautz being "retrained" on and "rereview[ing]" Costco's policies. (*Id.*) Moreover, despite being allegedly referred to as a "terrorist," Costco found there had been no comments directed at Plaintiff because of her race or national origin.

It is undisputed that Costco promptly investigated Plaintiff's internal complaint, (CSOF ¶ 61), and that this was the first time Plaintiff had raised any concerns regarding Kautz's comments,[7] (*id.* ¶ 60). However, based on the admissible and undisputed evidence, a reasonable jury could still find Costco's compliance efforts were not in good faith. Costco undoubtedly adopted an anti-harassment policy, but there is a genuine dispute as to whether its implementation of the policy here—by failing to find Kautz's conduct constituted a policy violation and disciplining him accordingly—was in good faith.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff has created a triable issue of fact regarding her claims for discrimination, retaliation, and punitive damages. Accordingly,

**IT IS ORDERED** Defendant Costco Wholesale Corporation's Motion for Summary Judgment (Doc. 29) is **DENIED**.

Dated this 19th day of March, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge

---

[7] Plaintiff objects to this fact as immaterial. Although it may not be material to Plaintiff's claims, it is clearly relevant to Costco's good faith affirmative defense—Costco's lack of prior notice makes it more likely that Costco's attempts to address Kautz's misconduct were in good faith.